## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
## WESTERN DIVISION

PHIL BERGER, *in his official capacity as* )
*President pro tempore of the North* )
*Carolina Senate*, and TIM MOORE, *in his* )
*official capacity as Speaker of the North* )
*Carolina House of Representatives*, )
     )
         Plaintiffs, )
     )
         v. )                NO. 5:16-CV-240-FL
     )
UNITED STATES DEPARTMENT OF )
JUSTICE; LORETTA E. LYNCH, *in her* )
*official capacity as Attorney General of the* )
*United States*; and VANITA GUPTA, *in* )
*her official capacity as Principal Deputy* )
*Assistant Attorney General*, )
     )
         Defendants. )

_____

NORTH CAROLINIANS FOR )
PRIVACY, *an unincorporated nonprofit* )
*association*, )
     )
         Plaintiff, )
     )
         v. )
     )                NO. 5:16-CV-245-FL
UNITED STATES DEPARTMENT OF )
JUSTICE; LORETTA E. LYNCH, *in her* )
*official capacity as United States Attorney* )
*General*; UNITED STATES )
DEPARTMENT OF EDUCATION; and )
JOHN B. KING, JR., *in his official* )
*capacity as United States Secretary of* )
*Education*, )
     )
         Defendants. )

## ORDER

These cases challenging the federal government's response to North Carolina's restriction on use of bathrooms, shower rooms, and changing facilities come now before the court on motions to consolidate respectively filed by plaintiff Phil Berger, President pro tempore of the North Carolina Senate, and plaintiff Tim Moore, Speaker of the North Carolina House of Representatives, in case number 5:16-CV-240-FL ("Berger") (DE 7); and plaintiff North Carolinians for Privacy ("NCFP") in case number 5:16-CV-245-FL ("NCFP") (DE 12), pursuant to Federal Rule of Civil Procedure 42(a). The goal of these motions is to create one omnibus case including another case also challenging purported federal overreach in the regulation of those same facilities, McCrory v. United States, 5:16-CV-238-BO (E.D.N.C. 2016) ("McCrory"). On June 21, 2016, a telephonic hearing and Rule 16 status conference was held in Berger and NCFP; counsel in McCrory also attended.

## BACKGROUND

A.    The Ordinance and Legislative Response

On February 22, 2016, the Charlotte, North Carolina, City Council voted to approve "An Ordinance Amending Chapter 2 of the Charlotte City Code Entitled 'Administration', Chapter 12 Entitled 'Human Relations', and Chapter 22 Entitled 'Vehicles for Hire,'" unofficially designated by the city as the "Non-Discrimination Ordinance" (the "Ordinance"). See http://charmeck.org/city/ charlotte/CityClerk/Documents/NDOrdinance.pdf (last visited June 29, 2016). As relevant here, the Ordinance added to the city's then-existing prohibition on discrimination protections for persons discriminated against on the basis of "gender identity [or] gender expression." Id. § 1. It also repealed certain pre-existing provisions of the Charlotte City Code allowing businesses to restrict on the basis of biological sex access to "[r]estrooms, shower rooms, bathhouses and similar facilities

2

which are in their nature distinctly private." Id. § 3. Thus, by its terms, the Ordinance allowed transgender persons, that is, those who identify with a sex different from their biological sex assigned at birth, to use the restroom or shower facility that corresponds with their gender identity. The Ordinance was scheduled to go into effect April 1, 2016.

Almost immediately, the Ordinance drew criticism from North Carolina Governor Pat McCrory, members of the state's legislature, and some members of the public. Opponents argued that the Ordinance swept far more broadly than the Charlotte City Council had intended and potentially could have negative consequences. On February 23, 2016, Speaker Moore, one of the Ordinance's opponents, vowed "to correct this radical course." Steve Harrison & Jim Morrill, After LGBT Vote, NC House Speaker Says Lawmakers Will 'Correct This Radical Course', Charlotte Observer, Feb. 23, 2016, available at http:// www.charlotteobserver.com/news/ politics-government/article61932507.html (last visited June 29, 2016). On March 22, 2016, Speaker Moore and North Carolina Lieutenant Governor Dan Forest, President of the North Carolina Senate, called both houses of the legislature into special session to address the Ordinance.

Following a one-day special session, held March 23, 2016, the state legislature passed Session Law 2016-3, titled "An Act to Provide for Single-Sex Multiple Occupancy Bathroom and Changing Facilities in Schools and Public Agencies and to Create Statewide Consistency in Regulation of Employment and Public Accommodations," commonly known either as the "Public Facilities Privacy and Security Act," or "HB2" (the "Act"). See H.B. 2, 2016 Sess. L. 3 (N.C. 2016). Section 1 of the Act, which is the most relevant section for purposes of these lawsuits, targets directly Charlotte's Ordinance. It requires "local boards of education" and "public accommodations" to adhere to a single sex, multiple occupancy bathroom policy, with "sex" defined

as "biological" or "physical" sex as "stated on a person's birth certificate." See id. §§ 1.2 & 1.3; see also id. § 1.1. Other provisions of the Act preempt local government control over the minimum wage, id. § 2.1; the power of local government to condition contracts with private parties on certain conditions or employment practices inconsistent with state law, id. §§ 2.2 & 2.3; and local discrimination ordinances. See id. §§ 3.1 & 3.3. Governor McCrory signed the Act into law on the March 23, 2016, session date.[1]

B.      Subsequent Litigation

The Act has been met both with ire and praise. On March 28, 2016, one of the groups expressing displeasure, the American Civil Liberties Union of North Carolina, filed suit in the United States District Court for the Middle District of North Carolina. See Carcaño v. McCrory, 1:16-CV-236-TDS-JEP (M.D.N.C. 2016) ("Carcaño"). Carcaño was brought, among others, on behalf of Joaquín Carcaño and Payton McGarry, persons born biologically female but who live their lives as males. As alleged, Carcaño and McGarry were diagnosed with gender dysphoria and have received hormone therapy to assist in the treatment of their medical condition.

According to the complaint, aside from hormone therapy, treatment for gender dysphoria requires use of single-sex restroom and locker room facilities consistent with one's gender identity. Carcaño and McGarry allege that they will be damaged as a result of the Act's biological sex restriction on state-operated bathroom and shower facilities. See Carcaño, 1:16-CV-236-TDS-JEP (DE 1, ¶¶28–33; 41; 45–53; 64–66; 72–82).

---

[1] Thereafter, on April 12, 2016, Governor McCrory signed Executive Order 93, implementing the substantive provisions of the Act. See Executive Order No. 93: To Protect Privacy and Equality (Apr. 12, 2016), available at https://ncgovernor.s3.amazonaws.com/s3fs-public/documents/files/McCrory%20EO%2093_0.pdf (last visited June 29, 2016).

The Carcaño plaintiffs assert a variety of claims against Governor McCrory; Roy Cooper, the North Carolina Attorney General; the University of North Carolina; the Board of Governors of the University of North Carolina; and Louis Bissette, Jr., Chairman of the Board of Governors. As relevant here, the Carcaño plaintiffs allege that § 1 of the Act violates on its face the Fourteenth Amendment's Equal Protection Clause. In particular, they allege that § 1 classifies people on the basis of their sex, gender identity, and transgender status, and treats transgender people different than similarly situated people who are not transgender.

In addition, Carcaño, an employee of the University of North Carolina at Chapel Hill, and McGarry, a student at the University of North Carolina at Greensboro, allege that § 1 of Act violates on its face their rights under Title IX of the Educational Amendments of 1972 ("Title IX"), 20 U.S.C. §§ 1681 et seq. In particular, they allege that by limiting bathroom, changing facility, and shower facility access along the lines of biological sex, defendants have denied them benefits "on the basis of sex" 20 U.S.C. § 1681(a). The Carcaño plaintiffs also raise a number of Constitutional claims not relevant here.[2]

C.      Determination Letters

Notwithstanding Carcaño, the state proceeded to implement the Act. Those efforts were met with hostility from the United States. For example, on April 5, 2016, the University of North Carolina, through its president, Margaret Spellings, publically indicated that the university system would comply with the Act. In reaction to that guidance, the United States Department of Education

---

[2] For example, they allege that § 1 of the Act violates the Fourteenth Amendment's Equal Protection Clause because it discriminates against homosexuals on the basis of sexual orientation; §§ 2 and 3 of the Act violate the Fourteenth Amendment's Equal Protection Clause by preempting local non-discrimination ordinances; and that the Act as a whole violates the substantive aspect of the Fourteenth Amendment's Due Process Clause by violating their fundamental rights to privacy and to refuse unwanted medical treatment.

("USDOE") requested information for the purpose of determining whether the university system, a recipient of federal funds, was in compliance with Title IX and the Violence Against Women Act (the "VAWA"), 42 U.S.C. § 13701 through § 14040. Previously, the USDOE had interpreted Title IX and its associated regulations with the purpose of including transgender individuals within the statute's reach, at least with respect to bathroom access. See generally G.G. ex rel. Grimm v. Gloucester Cty. Sch. Bd., __ F.3d__, 2016 WL 1567467 (4th Cir. 2016).

On May 4, 2016, the United States Department of Justice ("USDOJ") issued a series of three "determination letters" respectively to Governor McCrory; Secretary of the North Carolina Department of Public Safety, Frank Perry; and President Spellings. All three letters are to the same effect: § 1 of the Act violates federal law. The letter directed to Governor McCrory concludes that § 1 of the Act violates Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq, on its face. The letter to Secretary Perry likewise concludes that § 1 of the Act facially violates both Title VII and the VAWA. Finally, the letter directed toward President Spellings likewise concludes that § 1 of the Act facially violates both Title IX and the VAWA. The United States gave each recipient up to and including May 9, 2016, to "remedy" their respective violations of federal law or risk losing federal funding.

D.    Initiation of Litigation Following Carcaño

Coming on the heels of Carcaño are three related federal lawsuits filed May 9, 2016. One was filed in the Middle District and two were filed in this district. A fourth related case was filed in this district on the following day.

6

1.    <u>McCrory</u>

At 8:31 a.m. on May 9, 2016, Governor McCrory and Secretary Perry filed <u>McCrory</u> in this district, assigned to another judge.  <u>See</u> 5:16-CV-238-BO (DE 1).  Named as defendants are the United States of America; the USDOJ; Loretta Lynch, in her official capacity as United States Attorney General; and Vanita Gupta, in her official capacity as Principal Deputy Assistant Attorney General.  The <u>McCrory</u> plaintiffs seek a declaration that the state is "in compliance with Title VII" under the text of that statute.  <u>Id.</u> (DE 1 at 8).  In addition, they seek a declaration that the state is "in compliance with [the] VAWA," which they assume "specifically includes gender identity as a protected class."  <u>Id.</u> (DE 1 at 8–9).

2.    <u>United States</u>

At 3:16 p.m. on May 9, 2016, the United States of America filed suit in the Middle District. <u>See</u> <u>United States v. North Carolina</u>, 1:16-CV-425-TDS-JEP (M.D.N.C. 2016) (the "<u>United States</u>" case).  Defendants in that case are the State of North Carolina; Governor McCrory, the North Carolina Department of Public Safety; the University of North Carolina; and its Board of Governors. The United States seeks a declaration that § 1 of the Act violates Title VII, Title IX, and the VAWA.

3.    <u>Berger</u>

Also on May 9, 2006, eight minutes after <u>United States</u> was filed in the Middle District, and about seven hours after <u>McCrory</u> was filed here, Senator Berger and Speaker Moore filed <u>Berger</u>. Separate and apart from <u>McCrory</u>, <u>Berger</u> develops additional theories challenging the validity of the USDOJ's interpretative position.  For example, as <u>Berger</u> relates to Title VII, the <u>Berger</u> plaintiffs allege that § 1 of the Act does not discriminate on the basis of gender identity and that the term "sex" does not include gender identity.  Second, they allege that the USDOJ's interpretation

7

of Title VII, even if valid in light of the statute's text, runs afoul of Section Five of the Fourteenth Amendment, because the remedy it provides is not "congruent and proportional" relative to the discrimination it seeks to prevent. Third, the Berger plaintiffs allege that the USDOJ's interpretation of Title VII, even if valid in light of the statute's text, violates a number of principles related to federalism and the separation of powers, including the Commerce Clause, Spending Clause, Presentment Clause, and the Tenth Amendment. Finally, they allege that, even if § 1 of the Act violates Title VII in some instances, it cannot be facially invalid where it has at least one possible, permissible application.

Berger also raises concerns in response to the USDOJ's interpretation of Title IX and the VAWA, also not at issue in McCrory. In the context of Title IX, the Berger plaintiffs allege that § 1 of the Act does not discriminate on the basis of gender identity and that the term "sex" does not include gender identity. Second, they allege that the USDOJ's interpretation of Title IX, even if valid in light of the statute's text, was promulgated in violation of the notice-and-comment rule making procedure required by the Administrative Procedure Act ("APA"), 5 U.S.C. § 500 et seq., because, notwithstanding the USDOJ's position to the contrary, the rule announced was "substantive" or "legislative," as opposed to merely "interpretative." 5 U.S.C. § 553. Third, the Berger plaintiffs interpose a host of Constitutional claims targeting the USDOJ's interpretation of Title IX, including that the USDOJ's interpretation of that statute and its regulations violates the federalism principles embodied in the Tenth Amendment; violates the Spending Clause; and requires the state to violate both its citizens' fundamental right to bodily privacy and parents' fundamental liberty interest in directing the education and upbringing of their children, at least with respect to matters of sexuality. Finally, at least with respect to Title IX, they allege that, under the USDOJ's

interpretation of Title IX, § 1 of the Act still has some permissible applications and, therefore, is not facially invalid.

In the context of the VAWA, the Berger plaintiffs similarly allege that § 1 of the Act does not violate the VAWA because it does not discriminate on the basis of gender identity, but rather on the basis of biological sex, a consideration, they submit, that clearly is permissible under the VAWA, and, in all events, that the term "sex" does not include gender identity. Second, they also allege that the USDOJ's interpretation of the VAWA, even if valid in light of the statute's text, is inconsistent with the APA because it is arbitrary and capricious, where the USDOJ implemented it without considering fully the consequences of that interpretation, and otherwise not in accordance with the law, where that interpretation violates the USDOJ's own regulations, the "Prison Rape Elimination Act National Standards," 15 C.F.R. § 115.5 et seq. Third, the Berger plaintiffs allege that the USDOJ's interpretation of the VAWA violates Tenth Amendment's federalism principles, violates the Spending Clause, and requires the state to violate the Eighth Amendment rights of its inmates. Finally, they allege that § 1 of the Act, even if it violates the VAWA in some instances, does not violate the VAWA on its face, because it does not violate the VAWA in all instances.

4.      NCFP

One day later, on May 10, 2016, NCFP filed NCFP in this district. Like Berger, NCFP was assigned to this judge. Unlike McCory, and like Berger in part, NCFP centers on Title IX. Also like Berger, NCFP raises other, different issues for decision also not embraced by McCrory.

NCFP seeks a declaration that the USDOE's interpretation of Title IX, as adopted by the USDOJ, is inconsistent with the text of the statute and violates the APA, a federal statute, and the Constitution. First, NCFP alleges that the United States's interpretation of Title IX runs contrary

9

to the text of the relevant statute and regulations, because the term "sex" is unambiguous and may not be interpreted to include gender identity.

Second, NCFP alleges that, even if valid in light of the statute's text, the United States's interpretation of Title IX violates the APA where it was promulgated without observing the APA's notice-and-comment rule making procedures. Likewise, it alleges that the United States's interpretation of Title IX violates the APA where it is arbitrary and capricious because the USDOE, and by proxy the USDOJ, did not engage in reasoned decision making when adopting its interpretation; failed to consider potential negative consequences of mixing the biological sexes in bathrooms, shower facilities, and the like; and failed to explain appropriately its actions.

Third, NCFP alleges that the United States's interpretation of Title IX, even if valid in light of the statute's text, violates a federal statute and certain Constitutional provisions. In particular, NCFP alleges that the United States's interpretation of Title IX violates the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb et seq., because it substantially burdens the organization's members' sincerely held religious beliefs regarding modesty and nudity and does not further a compelling government interest. Likewise, NCFP alleges that the United States's interpretation of Title IX violates the organization's members' Fourteenth Amendment rights, including the fundamental right to privacy and the fundamental liberty interest in directing the education and upbringing of one's child; violates the First Amendment's Free Exercise Clause; and violates the Spending Clause.

In addition, NCFP seeks a declaration that § 1 of the Act does not violate Title IX, that § 1 of the Act does not violate the VAWA, and, in all events, the USDOJ's interpretation of the VAWA

exceeds the VAWA's regulatory mandate. NCFP also requests an injunction, prohibiting the United States from stripping the state's federal funding pending disposition of its case.

E.      Subsequent Litigation Developments

1.      Carcaño

Carcaño has progressed substantially and now presents issues concerning USDOJ's interpretation of Title IX as it relates to that statute's text, the procedure employed by the USDOJ in interpreting the statute, and the validity of the USDOJ's interpretation in light of other substantive provisions of law. On May 25, 2016, the Berger plaintiffs filed a motion to intervene in Carcaño. 1:16-CV-236-TDS-JEP (DE 33). Their motion to intervene was granted June 6, 2016. Id. (DE 44). On June 9, 2016, the Berger plaintiffs answered the complaint and interposed counterclaims against the Carcaño plaintiffs. Id. (DE 54).

As relevant here, the Berger plaintiffs now assert in Carcaño a claim against the Carcaño plaintiffs for a declaration that § 1 of the Act does not violate on its face the Fourteenth Amendment's Equal Protection Clause. In addition, they request a declaration that § 1 of the Act does not violate Title IX, or, in the alternative, that the Carcaño plaintiffs' interpretation of Title IX violates the federal Constitution.

In the meantime, the Carcaño parties, including the Berger plaintiffs and Governor McCrory, nearly have completed briefing on a motion for preliminary injunction. Id. (DE 21; DE 22; DE 27; DE 55; DE 61; DE 73). That motion seeks to enjoin Governor McCrory, as well as other defendants, from enforcing § 1 of the Act.

2.    United States

United States presents for decision nearly the full complement of issues presented in this district in McCrory, Berger, and NCFP.  The Berger plaintiffs moved to intervene in United States on May 17, 2016.  The Berger plaintiffs declared in United States in furtherance of their motion to intervene similarity of issues raised here: "[O]n the same day the [USDOJ] sued in this District, the Proposed Intervenors filed their own declaratory judgment action in the Eastern District of North Carolina, raising multiple questions of law and fact nearly identical to questions raised by the Department – questions which, moreover, are raised in the pleading accompanying this intervention."  United States, 1:16-CV-425-TDS-JEP (DE 9 at 6).  Likewise, on June 28, 2016, NCFP moved to intervene in United States.  Id. (DE 58).  In support of its motion, NCFP attests to the similarity between NCFP and United States: "NCFP has a pending action in the Eastern District of North Carolina involving some of the same legal issues at stake in this case."  Id. (DE 59 at 6).

That case also includes challenges by Governor McCrory, through the vehicle of affirmative defenses, to the USDOJ's interpretation of Title VII, Title IX, and the VAWA in light of the text of those statutes, the procedures employed by the USDOJ in interpreting those statutes, and other substantive provisions of law.  Id. (DE 32).  Moreover, Governor McCrory asserts two counterclaims that are identical to his principal claims in McCrory.  Id. (DE 32).

United States has progressed, too, on claim for injunctive relief.  On June 10, 2016, the United States parties filed a joint motion for injunctive relief, raising the time-sensitive issue of whether or not certain federal funds made available to defendants under the VAWA should be suspended, a concern implicit also in Berger and NCFP.  By order entered June 23, 2016, the court granted the parties' joint motion, holding that "while entertaining serious concerns about the

12

positions taken by the parties and the court's authority to enter an injunction under the circumstances of this case, the court finds that, in the absence of clear authority to the contrary and in light of the substantial harm that suspension of funding in question would inflict on wholly innocent third parties, the court will grant the motion preliminarily." Id. (DE 53 at 1).

3.      Related Eastern District of North Carolina Cases

On May 17, 2016, the McCrory plaintiffs filed an unopposed motion to transfer their case to the Middle District. There, they pointed out that United States had been, for all intents and purposes, filed contemporaneously with McCrory. In addition, they pointed out that Carcaño, filed nearly two months earlier, raises similar issues and has been assigned to the same United States District Judge. The McCrory plaintiffs argued that a transfer to the Middle District would "greatly enhance efficiency for the parties and the public while avoiding piecemeal litigation and reducing inconvenience to the witnesses." McCrory, 5:16-CV-238-BO (DE 10 at 6).

Thereafter, on May 23, 2016, the instant motions to consolidate were filed in Berger and NCFP. Berger, 5:16-CV-240-FL (DE 7); NCFP, 5:16-CV-245-FL (DE 12). The Berger plaintiffs argue that decision on their motion seeking to consolidate should come first, before any decision on the McCrory plaintiffs' consent motion to transfer. "[B]ecause McCrory and this case are obviously related, the proper course is first to consolidate the two cases before making any decision about whether or not to transfer them to the Middle District." Berger, 5:16-CV-240-FL (DE 8 at 6).

Grabbing hold of the "interested party" role designation in the court's electronic case filing system ("CM/ECF"), without leave or the making of any motion to intervene, the Berger plaintiffs catapulted themselves in the McCrory case. There, they filed a motion to consolidate identical to

the one they previously had filed in the Berger case. Id. (DE 7); McCrory, 5:16-CV-238-BO (DE 11).

The McCrory plaintiffs followed suit, adopting CM/ECF's "interested party" label and, also without leave or the making of any motion to intervene, filed a response in Berger in support of the Berger plaintiffs' motion to consolidate Berger with McCrory, on the condition however that any consolidation not "in any way impede[] or interfere[] with the transfer of [McCrory] to the Middle District." Berger, 5:16-CV-240-FL (DE 13 at 2). In the Berger case, defendants' response to the motion to consolidate was not due until on or before June 16, 2016.

On May 24, 2016, one day after the Berger plaintiffs filed their motion before this court, NCFP filed in NCFP its motion to consolidate NCFP with McCrory. NCFP, 5:16-CV-245-FL (DE 12). NCFP, like the Berger plaintiffs, put itself on the docket in the McCrory case where on May 24, 2016, as an "interested party" in CM/ECF, it filed an identical motion to consolidate NCFP and McCrory. McCrory, 5:16-CV-238-BO (DE 22).

Into the muddied case waters the Berger defendants had not yet waded. As noted, their response to the motion to consolidate in the Berger case before the undersigned was not due to be made until on or before June 16, 2016.

In the meantime, on May 23, 2016, the judge assigned to McCrory announced he would decide the "interested party" Berger plaintiffs' motion to consolidate before addressing the McCrory plaintiffs' consent motion to transfer. Id. (May 23, 2016, text order). On May 26, 2016, the judge assigned to McCrory stated that the final decision on consolidation rests with the judge to whom the case is assigned, announcing that consolidation of McCrory and Berger "will be allowed if permitted by the judge to whom [Berger] is currently assigned." Id. (DE 32 at 1–2). On June 7,

14

2016, as the <u>Berger</u> plaintiffs' instant motion to consolidate was ripening before the undersigned, the judge assigned to <u>McCrory</u> denied the <u>McCrory</u> plaintiff's consent motion to transfer. <u>McCrory</u>, 5:16-CV-238-BO (DE 34).

On June 13, 2016, three days before the <u>Berger</u> defendants' response to the <u>Berger</u> plaintiff's instant motion to consolidate was due to be filed in the above-captioned case, the judge assigned to <u>McCrory</u> again suggested, by separate order, that <u>Berger</u> and <u>McCrory</u> would be consolidated. <u>Id.</u> (DE 36). On June 15, 2016, two days before the <u>NCFP</u> defendants' response was due in <u>NCFP</u>, the undersigned set these cases before her for hearing on the motions to consolidate and for Rule 16 status conference for June 21, 2016. On June 20, 2016, one day before that hearing and conference, the judge assigned to <u>McCrory</u> suggested in separate order that <u>NCFP</u> also would be consolidated with <u>McCory</u>.[3] <u>Id.</u> (DE 43).

---

[3] The undersigned has waited for the separate response deadlines to expire before ruling on the instant motions to consolidate in <u>Berger</u> and <u>NCFP</u>. It appears, however, that during that time confusion has developed in the clerk's office and among the litigants as to the status of these cases. For example, the <u>Berger</u> plaintiffs having entered <u>McCory</u> and filed there their motion to consolidate pending before the undersigned triggered discourse with the <u>McCory</u> plaintiffs, who responded separately on May 25, 2016. The next day, a "court only" flag prematurely was triggered by the <u>McCory</u> case manager stating "Replies due by 6/13/16," seemingly depriving the <u>Berger</u> defendants of their opportunity timely to respond in this case, which period did not elapse until June 16, 2016. On June 14, 2016, after suggested ruling on the motion in <u>McCory</u> the day before, defendants in <u>NCFP</u> filed response in opposition to consolidation, wherein they misapprehended significance of suggested ruling in <u>McCory</u>. There can be no consolidation of two cases assigned different judges until the judge assigned to the case to be consolidated relinquishes her authority over it. <u>See</u> <u>Vorel v. Johns</u>, No. 5:10-CT-3005-FL, 2010 WL 4735829, at *1 (E.D.N.C. Nov. 15, 2010). As the judges of this court have noted, that much should be plain. The consolidation of cases assigned to multiple judges necessarily entails the reassignment of the case to be consolidated from one judge to the other. Without orderly rules and procedures to govern consolidation, and, by proxy, reassignment, a party's indiscriminately filed motion to consolidate might invite dereliction of the carefully constructed system used to distribute cases between the judges of a district. To make it even plainer that final decision on motions in cases assigned to me rests with me, to promote efficiencies sought after by all parties, where the nature of this litigation has been made more complex in no small part by the parties' own strategic litigation decisions, and given the practical difficulties arising for the clerk's office in effective case management, the court set hearing and Rule 16 status conference in these cases June 15, 2016, by telephone for June 21, 2016.

## COURT'S DISCUSSION

A.      Motions to Consolidate <u>Berger</u> and <u>NCFP</u> with <u>McCrory</u>

The court denies the instant motions to consolidate <u>Berger</u> and <u>NCFP</u> with <u>McCrory</u>. Granting those motions would impede the efficient administration of justice. There exists a more direct path to final resolution of the central question presented in all five actions, the validity of the Act under federal Constitutional and statutory law, which question encompasses all of the other issues raised by the <u>McCrory</u> plaintiffs, the <u>Berger</u> plaintiffs, and NCFP.

"If actions before the court involve a common question of law or fact, the court may . . . join for hearing or trial any or all matters at issue in the actions; . . . consolidate the actions; or . . . issue any other orders to avoid unnecessary cost or delay." Fed. R. Civ. P. 42(a). In ruling on a motion to consolidate the "critical question" is whether the case presents "specific risks of prejudice and possible confusion" and, if so, the magnitude of those risks relative to the "risk of inconsistent adjudications on common factual and legal issues, the burden on parties, witnesses and available judicial resources posed by multiple lawsuits, the length of time required to conclude multiple suits as against a single one, and the relative expense to all concerned of the single-trial, multiple-trial alternatives." <u>Arnold v. E. Air Lines, Inc.</u>, 681 F.2d 186, 193 (4th Cir. 1982), <u>reh'g granted and rev'd on other grounds</u>, 712 F.2d 899 (4th Cir. 1983) (en banc).

In the usual case, consolidation would be warranted. The risk of inconsistent adjudication is high and the relative expense of multiple proceedings, as compared to a single proceeding, is plain. As to the risk of inconsistent adjudication, the similar substantive and procedural issues raised by <u>McCrory</u>, <u>Berger</u>, and <u>NCFP</u> are presented now through the vehicle of five different cases, including <u>Carcaño</u> and <u>United States</u>, assigned to three different district judges over the span of two

districts. The very fact that these cases are presented to isolated decision makers raises beyond the speculative level the fear of inconsistent adjudications. That threat is even more real in light of the fact that each case presents a collection of substantively identical claims along side different, but related claims.

Notwithstanding the above, the court declines the parties' invitation to consolidate either Berger or NCFP with McCrory on the unique circumstances presented. Considering only the three cases pending in this district, it is abundantly clear that the true center of gravity around which this dispute lies is presented to the undersigned, rendering consolidation with the less rigorous McCrory inappropriate.

Berger and NCFP present a more robust challenge to the United States's interpretative position. The Berger plaintiffs and NCFP attack the USDOJ's interpretative guidance through three avenues. First, they each raises a textual argument, alleging that the USDOJ's interpretation is impermissible in light of Title VII, Title IX, and the VAWA's text. Second, they each raises procedural issues, alleging that, even if the USDOJ's interpretation of the relevant statutes is permissible under the text of those statutes, that said interpretation was promulgated in violation of the APA. Finally, they each raises a substantive, independent legal challenge to the USDOJ's interpretative guidance. In particular, the Berger plaintiffs and NCFP all allege that the USDOJ's interpretation of Title VII, Title IX, or the VAWA violates numerous provisions of the Constitution. The McCrory plaintiffs, by contrast, limit their challenge to the text of the relevant statute. For example, they request a declaration that the state is in compliance with the VAWA, assuming that the VAWA "specifically includes gender identity as a protected class." McCrory, 5:16-CV-238-BO (DE 1 at 8–9). Thus, consolidation with the less rigorous McCrory is inappropriate.

17

Consolidation of <u>Berger</u> and <u>NCFP</u> with <u>McCrory</u> also is inappropriate where it would defy the mandate of Federal Rule of Civil Procedure 1. The court must "construe[], administer[], and employ[] [the Federal Rules of Civil Procedure] . . . to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. Consolidation of the cases now pending in this district falters on that goal, where it provides only temporary relief to a long-term problem. Even if the court were to consolidate these cases, there still is a risk of inconsistent and expensive parallel proceedings where similar actions remain pending in the Middle District and no party seems ready to accept a stay in any case. In fact, the <u>Berger</u> plaintiffs recently have confirmed that, in the absence of some kind of single-district solution, they would continue to press their position in both the Eastern and Middle Districts. See <u>United States</u>, 1:16-CV-425-TDS-JEP (DE 50 at 1–3). A transfer best accomplishes Rule 1's goal.

B.      Court's Sua Sponte Transfer of <u>Berger</u> and <u>NCFP</u>

Pursuant to 28 U.S.C. § 1404(a), a district court may transfer a case to any other district "where it might have been brought" if such transfer is determined in the court's discretion to be "for the convenience of the parties and witnesses [and] in the interest of justice." 28 U.S.C. § 1404(a). The district court may consider the possibility of transfer sua sponte. <u>Feller v. Brock</u>, 802 F.2d 722, 729 n.7 (4th Cir. 1986).

In exercising its discretion to transfer a case, the court is guided by a number of factors, including consideration of practical solutions of administrative efficiency that might make the proceedings easy, expeditious, and inexpensive. See <u>Plant Genetic Sys., N.V. v. Ciba Seeds</u>, 933 F. Supp. 519, 527 (M.D.N.C. 1996). In addition, where similar law suits have been filed in multiple federal forums, the first-filed suit usually should have priority, "absent the showing of balance of

18

convenience in favor of the second action." <u>Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co.</u>, 386 F.3d 581, 594–95 (4th Cir. 2004); <u>Ellicot Mach. Corp. v. Modern Welding Co.</u>, 502 F.2d 178, 180 (4th Cir. 1974). To determine whether a case is the "first filed" the court looks to 1) the chronology of the filings, 2) the similarity of the parties, and 3) the similarity of the issues at stake. <u>Nutrition & Fitness, Inc. v. Blue Stuff, Inc.</u>, 264 F. Supp. 2d 357, 360 (W.D.N.C. 2003); <u>see also</u> <u>Allied-Gen. Nuclear Servs. v. Commonwealth Edison Co.</u>, 675 F.2d 610, 611 n.1 (4th Cir. 1982); <u>Carbide & Carbon Chems. Corp. v. U.S. Indus. Chems.</u>, 140 F.2d 47, 49 (4th Cir. 1944).

As a threshold matter, both <u>Berger</u> and <u>NCFP</u> could have been brought in the Middle District. Pursuant to 28 U.S.C. § 1391(e), where a plaintiff sues an agency or officer of the United States, venue may be laid in any judicial district where "a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(e). A significant portion of the events giving rise to the claims at issue occurred in the Middle District. If the United States were to pull federal funding from schools, universities, and the prison system, among other things, the effect of that action would be felt wide, including in the Middle District. In fact, the court in that district already has addressed this issue, preliminarily, for the benefit of the State of North Carolina.

Here, the "interest of justice" favors a transfer of the <u>Berger</u> and <u>NCFP</u> cases to the Middle District. Both the "first-filed" rule and considerations of administrative efficiency counsel in favor of that result. First, <u>Carcaño</u> was the first-filed case and is owed a degree of deference. That case challenges § 1 of the Act under Title IX. The Title IX claim raised by the <u>Carcaño</u> plaintiffs is the mirror image of the Title IX claims raised by the <u>Berger</u> plaintiffs and NCFP. They raise common questions concerning the validity of the Act under a federal statute. In many ways, the claims presented by the <u>Carcaño</u> plaintiffs on the one hand, and the <u>Berger</u> plaintiffs and NCFP, on the

19

other, are two sides of the same coin; the Constitutional and statutory claims asserted by the Berger plaintiffs and NCFP with respect to Title IX respond directly to and could be asserted in defense to the Carcaño plaintiffs' Title IX claim.

Although the Berger plaintiffs also raise Title VII and VAWA claims, the conceptual difference between a fully and thoroughly litigated Title IX claim, as compared to a Title VII and VAWA claim is minimal because the relevant language in each statute is substantively identical; each claim likely will turn on the same or similar analysis. See Jennings v. Univ. of N.C., 482 F.3d 686, 695 (4th Cir. 2007) (courts look to Title VII to interpret Title IX); Braden v. Piggly Wiggly, 4 F. Supp. 2d 1357 1361 (M.D. Ala. 1998) ("The legislative history also reveals that Congress intended the language of the VAWA to mirror that of Title VII."). Thus, the structural similarity between the three cases is a persuasive basis upon which to ground a transfer.

However, the court recognizes that Carcaño is not a perfect analogue of either Berger or NCFP. In particular, Carcaño challenges the Constitutionality of the Act directly, while Berger and NCFP challenge only the USDOJ's interpretation of several federal statutes. Even though these cases are not perfectly analogous, the totality of the circumstances suggests they should be tried together, or at least on a unified schedule before one judge. As an initial matter, § 1404 does not require a one-to-one correspondence of issues. In addition, although the issues raised in both cases certainly are unique, the court views them in their larger context. All of the issues presented between Berger, NCFP, and Carcaño bear on a common question, whether the Act survives in the face of federal law. Thus, the court considers Carcaño to be the first filed and will defer to it.

In any case, the joint administration of Berger and NCFP alongside Carcaño and United States will accrue significant administrative and financial benefits to all interested parties. As to

administrative benefits, the litigants will receive substantial benefit of having one judge control all four cases, and with them all substantive issues related to the validity of the Act under federal Constitutional and statutory law. That will allow a single decision maker to render timely decisions and coordinate deadlines between the parties. Moreover, the public will experience a significant benefit from the joint administration of these cases. The undersigned makes no forecast on the merits of any case now pending. However, different, potentially inconsistent, decisions by different judges does no service. Such a convoluted result would leave the public in disarray and uncertain about their legal rights.

That these cases would benefit from a transfer plainly is evident. At hearing, no party expressed opposition to the court's transfer related inquiries. Moreover, the benefits of a transfer are apparent from the parties' positions of record. For one example, on June 23, 2016, the <u>Berger</u> plaintiffs filed in <u>United States</u> a supplemental brief indicating that they would "continue participating in [the Eastern and Middle District] proceedings unless and until they are consolidated in a single district." <u>United States</u>, 1:16-CV-425-TDS-JEP (DE 50 at 1). Indeed, the <u>Berger</u> plaintiffs provided that, if these proceedings are to remain fragmented, they have "no choice but to protect their interests in both courts." <u>Id.</u> (DE 50 at 3). For another example, NCFP similarly has evidenced its intent to proceed in both the Eastern and Middle Districts absent consolidation in a single district. <u>Id.</u> (DE 58). In light of the parties' clear intent to pursue and protect their interests wherever necessary, the court concurs with the <u>Berger</u> plaintiffs, "judicial efficiency would be served by having [all actions in the Eastern and Middle District concerning the Act] consolidated and tried before the same tribunal." <u>Id.</u> (DE 50 at 2).

Berger and NCFP are transferred to the Middle District for all the reasons outlined above. A transfer will give both sides the opportunity to attack or defend the Act with a full arsenal of legal theories. Resolution of this dispute needs such an arrangement. Civil Rule 1 compels it. The public interest requires it.

## CONCLUSION

Based on the foregoing, the court DENIES the Berger plaintiffs' motion to consolidate case number 5:16-CV-240-FL with case number 5:16-CV-238-BO. Berger, 5:16-CV-240-FL (DE 7). Likewise, the court DENIES NCFP's motion to consolidate case number 5:16-CV-245-FL with case number 5:16-CV-238-BO. NCFP, 5:16-CV-245-FL (DE 12).

On its own initiative, having heard from the parties further at hearing and conference June 21, 2016, the court TRANSFERS case number 5:16-CV-240-FL and case number 5:16-CV-245-FL to the Middle District. The clerk of court is DIRECTED immediately to transmit a certified copy of this order and associated case files to John S. Brubaker, Clerk of Court, United States District Court for the Middle District of North Carolina, and thereafter close these cases.

SO ORDERED, this the 29th day of June, 2016.


_____
LOUISE W. FLANAGAN
United States District Judge